Mr. Monterano, is he here? We're just standing outside If he's right out there, that'll be kind of you May it please the court, I'm Charles Burnham here on behalf of appellant Timothy Hurt and let me ask you I I have on my chart that you were going to argue second have you changed the order or is that I the plan was for myself to argue first and I'll address the jury issue and then Mr. Montemarano will argue second on behalf of defendant Baysmore and he'll address the expert witness issue. Okay, fair enough, fair enough. Coming then to the to the issue I'll be addressing which is our contention that the district judge erred by refusing in response to juror safety concerns and other issues with the jury to either declare a mistrial or in the alternative to engage in a more searching voir dire to address the issues Then the court ultimately did and the court will recall from the briefs what started all this. This is a racketeering case There were some serious allegations involving gangs one of the jurors juror number five came forward and said she was afraid for her life afraid for her family and Importantly admitted on the record to discussing her fears With not only the three named parties that the three named jurors, but possibly the entire jury the way she put it What was presented to the court was really two problems. One was that the jurors had started discussing the case well before they were supposed to. The evidence wasn't in and to the nature of the discussion was a possible serious prejudice. But on the former question, they're not discussing the merits of the case. I mean, there's not an instruction to the jury that they not have any discussions, right? I mean that in their distinction between discussing the merits of the case and you know, noting that, you know, something about what was happening in the courtroom. The way Judge Bradar addressed exactly your honor's question was perhaps it was okay to discuss procedures. When are we going to break? When are we going to go to lunch? But they weren't to discuss the evidence in the case. And in this case, what the record shows is they were discussing the evidence. Perhaps they didn't say who's guilty, who's not, although we don't really know. But they did discuss the evidence in the case. There was a specific reference by juror number five to quote, if what she called it the state, if what the state proves is turns out to be true about these men, we're going to be very afraid. And we absolutely do contend that that crossed the line into premature deliberations, really discussions of the evidence amongst the jury, which is why we move for a mistrial even initially, which the judge denied. At that point, what his honor did was allow the government counsel and the three lawyers for the defendants to, to discuss the case, at which point there was a joint proposal between all five lawyers, two prosecutors, three defense attorneys, that the questions the judge ought to ask were as follows. One, have any of you discussed the trial or the jury selection with juror number five? Two, if so, what were those discussions? And three, finally, would any of those discussions endanger anyone's ability to be fair and impartial, which is pretty much the standard format for any voir dire. What are the potential prejudicing factors? And then after that, addressing whether that poses a threat to the impartiality of one juror or the whole jury. And I have all the respect in the world for Judge Bredar, but he basically overruled not only the defense attorneys, but the prosecutors who agreed with what we were asking, and instead questioned the jury solely on whether anything had occurred to change their initial answers that they could be fair and impartial, which basically delegated. Well, since no one's going to take up for Judge Bredar, it seems to me that the argument is on his behalf, is that if I were to ask specifically about danger was discussed, as opposed to anything discussed, then that would plant a fear of danger in each juror and unnecessarily. And his net that he was seeking would cover that, was anything discussed with juror five, and if so, would that lead? It seems to me that this is a matter of art in a trial judge, and there's a lot of discretion in it, and I think your burden would be a heavy one to say that he recognized what you were saying, but decided not to. In fact, the jury with the questioning, and I think that was his purpose, just if I can speak on his behalf. It certainly was his purpose, and in fact, your honor is making the same argument that defense attorneys made when the problem first arose. We moved for a mistrial immediately for exactly the reasons your honor identified, that any further questioning was just going to create bigger problems than it solved. But our position we then took, once the mistrial was denied, was that if we were going to go down the road of asking further questions, we ought to do it right. We ought to define some questions that actually will get at the problem. Well, to say we ought to do it right suggests that what Judge Bredar did was wrong. I guess that's your argument. My only comeback on that was it was a delicate exercise of discretion, and Judge Bredar explained himself in doing that. And the question is, was that an abuse? He absolutely did, and I'll make two points in my one minute remaining. One, obviously a mistrial is nothing anybody wants to have happen, but the cases are clear that the risk of a mistrial has to be weighed against the defendant's very important right to a fair and impartial jury. And there was no finding from Judge Bredar that the potential of a mistrial outweighed that right. It was very close to the beginning of a very long trial. One of the defendants had unexpectedly pled guilty at the first day of trial, so we had a little more time than we thought we were going to have. And the only scheduling concern that came up was the judge said, well, I'd like to go to the Fourth Circuit Judicial Conference, which I'm sure is a wonderful event. But then he specifically said he was willing to miss it in the event a mistrial had to be declared and another jury had to be selected. So we're not dealing with a case where the judge found that for some scheduling reason, a mistrial outweighed the defendant's rights. That's not what we have. And the final point I'll make with my last seconds is I think the best example of how to handle this is United States against Resco, Third Circuit, 1993. We're in response to a very similar problem they were having with that jury. The judge inquired, very much as Judge Bredar did, can you all, does anything happen that would make you unable to be fair? All the jurors said, no, we can still be fair. But the case was nonetheless reversed exactly on the ground. And I'm arguing that the judge improperly outsourced the decision of whether the jurors can be impartial to the jurors themselves. Thank you, Your Honor. All right. Thank you, Mr. Moore. OK. Mr. Montemorano. Good morning, Your Honors. Judge Thacker, Judge Niemeyer, Judge Richards. It is clear that the problems that arose regarding the use of Special Agent Mark James of the FBI as a part of the government's case arose from the mode in which the government chose to use the Special Agent. This case comes, in the view of the appellants, within the four corners of this court's decision in 2014 in United States versus Garcia. I respectfully submit that Garcia gives us all the information and all the standards that we need to apply to the government's use of this witness. There must be a clear demarcation when you use a case agent as well as an expert witness and a facts witness. That there must be a clear explanation of when the witness is testifying in what fashion, A, and a clear demarcation. Can I ask you a more fundamental question? I understand that proposition. And of course, in this case, James was called as an opinion expert and then as a fact witness. But what is, how do you understand the importance of telling the jury what is opinion and what is fact from a witness who is going to testify to both? For starters, when he is basing an opinion on facts that he's gained solely through the course of the investigation, the view a jury will take of an expert witness is to elevate them to a somewhat higher pedestal than the average witness, an eyewitness, perhaps. Well, he is an eyewitness. I mean, he's talking to people, he's gathering evidence, he's examining guns, he's listening to telephone conversations and... No doubt. And he's investigating the case and collecting facts, which he's allowed to testify to. Absolutely. And my real question is, if he testifies to the jury and says, okay, this is a fact thing, I experienced this. And then he says, okay, I'm now about to give you an opinion based on that fact. And he gives this opinion. What is the distinction for the purposes of the jury on that? How do you, how does the jury receive those two forms of evidence? And is it difference? And if they're confused, is it a problem? It's certainly a problem if they're confused. And that's the reason that Garcia draws in... Well, I understand all that. I want to understand, get to the fundamental thing. What is the problem that a jury has? If a person testifies, gives his opinion, and he's a respected expert, and the jury hears the opinion, and he then states a fact, what is the difference for purposes of the jury? What is your argument that is there a different weight to that? Absolutely. The simple fact is that a jury will then give weight to testimony, which cannot be the subject of expert testimony. For example, the explanation of meaning of certain coded language, allegedly coded language in here, is really much more idiosyncratic verbiage used in inner city Baltimore. And he cannot begin to know what this means in the context of this case before the case began. That would make it expert testimony. That would make it an expert opinion. If he knew this before the investigation began, it would be based on knowledge, training, and experience, which are the three fundaments of expert testimony. When he's testifying as a fact witness, these are things that he can only gain through the course of the investigation. I know, but what's the difference for the jury's purposes? Is there an injustice? I mean, they... Absolutely. Well, tell me then. They will elevate this information to the level... Which information? The opinion or the fact? The opinion based upon things which should not be the subject of opinion. Your Honor, it fails in your question to distinguish between legitimate opinion testimony that an expert may give, which we have no problem with, and what we see Special Agent James repeatedly giving, which is testifying as to his opinion about the context of the call. All right, so courts have for a long time been allowing investigating officers to explain the language in telephone conversations. And for instance, and this is just a quick hypothetical, we had a case where they were using a car dealership for a location for distributing drugs. And the guy calls up and says, I'll take six cars. The jury hears that and doesn't know what they're talking about. And the expert says, that means six kilos of things, because I know, number one, what they've been doing in the past. I know how much they had and the price they gave is the street price and this type of thing. And I've heard this language used in the past. Yeah, so that explanation, that six cars or six kilos of cocaine, is allowed in and the courts approve that. Now, the question is, is that an injustice? Is there something wrong? I mean, that's all subject to cross-examination. You can get up and say, well, how do you know it's not cars? And how do you know it refers to kilos and not pounds or this type of thing? All of that's cross-examination, but the jury needs help on knowing that six cars is an order for six kilos. The jury certainly does need help and the Garcia opinion certainly permits that kind of help. Well, yeah, but I'm trying to get to the root of the distinction. In other words, Garcia, and as a matter of fact, I think all our cases make a distinction between opinion and fact. And I understand that. The real question is, is the difference between that type of evidence meaningful for purposes of justice and for purposes of the jury? Now, your argument is, and maybe it's a good one, is that now the officer gets to give an opinion about which he's not allowed to give an opinion. Correct. And he doesn't have a fact on it because he doesn't know. Correct. Has no foundation, no basis, which is why. So that's fair enough. That's a good argument, I think, where the blur is. But wouldn't that go on a question by question basis? Absolutely. And that's exactly what Garcia demands. Well, I understand that. But Garcia also is very difficult to apply. And judges are having trouble all over with this type of problem. I've heard these cases now for years. And this problem arises again and again, 702 evidence of an officer and the prosecution needs the opinion explanation. And the officer, in order to give the opinion, needs a factual context. And he happens to be the one that gathered the facts. So these questions get very, very close. And it seems to me we can take a look at a particular question and answer and say, this was erroneous. But then the judge can say to the jury, this officer is allowed to give you facts and he's allowed to give you opinions. And with respect to that, you have to make a distinction. Now, this judge did that, of course. But I don't want to get into the standards of Garcia, because Garcia sort of took it. I would point out one thing for your honor. You suggest that we can look at each question and answer. I reflect that you would take issue with that. I think what you have to look at is each question, each answer, and the objection that follows. Because it is that objection. Well, that's how you preserve it, obviously. No, we're not preserving it. That's what clues in the trial court that there's a problem regarding this. And a few times, Judge Bredore- But in this case, you guys had a standing objection, which doesn't help a thing. In other words, the guy's testifying and the judge says, OK, you have a standing objection. And so now we're coming back on appeal. And you're picking all the testimony apart and say, well, this one's improper because he went over the line. He shouldn't have given an opinion on that particular word. But then, and you may be right. But then the next thing, it's sort of harmless because he's explaining something that's obvious. That's one point area where you guys- That's not a place where we were objecting in this case, nor, frankly, did we object below in person. What's the best type of question and answer in this case that you think really hurt the jury, hurt your standing for the jury? Let's pick a good one. Quote, I already talked to him about the yo, yo, you told me not that yo, not right point blank. He, he, he gave you all the o's. OK, so anybody got a problem with it, holler at yo. Interpreting that is- But why is it harmful? His question is like, but given everything else that we've got, why is that at all harmful to your client? Well, just below that, this is on page 39 of our brief. Yeah, I've read that question. He's saying that Mr. Baysmore gave them authorization to shoot Ronald Hall. Representing Mr. Baysmore, I humbly submit that's prejudicial to Mr. Baysmore. But we heard in 322, like session 322 of the wiretap, we heard the actual authorization. Right, I mean, that's that's the actual authorization, like this is at most cumulative to that. I think it stands alone because of the nature of this and the number of times this happened. Stick with this one. What's the problem? He had to explain that, right? Yes. What the yo was. I've always understood yo as a greeting type of thing, a referring sort of a short of you, yo. But there- Sometimes. There, well, that's exactly right. He says there is being used as a pronoun, right? In the same sentence. Yeah, well, exactly. But he's explaining that. Now, a jury could not make heads or tails of that. This guy's been listening and he knows the usage. And so he explained that yo was referring to the particular, what, Healy or somebody? And he couldn't have known that until he heard the call. And he couldn't have known that about this call. Well, what's wrong with that? Because if he didn't know it before the investigation, it's not the subject of expert testimony. Expert testimony comes from your prior knowledge and not your knowledge focused upon this investigation. I understand. So somebody making the phone call, you know who's on the phone. Now there's some pronouns used. And it seems to me at that point to explain all those yo's and the different ones, one's a greeting and one's referring to a pronoun. He's used to hearing that language and he understands it. I must say, I had a hard time looking at it and his explanation helped. And I think it's accurate. But his explanation, and even if his explanation is correct, it's not the subject of expert testimony. That is what Garcia calls very clearly the transmission of hearsay to the jury. Just hold it. Let's stick with this. Why isn't this helpful subject to expert? Helpful is not the touchstone, Your Honor. Tell me what is. It's legitimate. Because he couldn't have known this. He couldn't have known who they were talking about and how this conversation. All right, this is the way, if your point were carried out, as an expert, he would say yo, as used in this sentence, is used either as an address and a greeting or as a pronoun. I can't tell you absent context who the pronoun refers to, but it is used as a pronoun. So that's my expert opinion. Now, as a factual matter, I'm going to testify that I listened to this call and the person picking up the phone said Healy. And so I know it's referring to Healy. And there's a general subject because of a couple of sentences before they were talking about addressing this other guy. And that's what it refers, and that's what I heard. Correct. And so I think you would probably be able to go, that may be pushing the edge of the envelope, Your Honor, but you're allowed to do that. I respectfully submit that that is absolutely the way to look at it. And it is no... I understand. I just, my initial questioning was to say, this is a difficult area. I understand it. And there is the problem you described, which I think is a legitimate problem. The way to address that problem, when you have the investigator giving opinion and facts, where they're dependent on each other, because the opinion is, is a very contextually, it's a modus in its context. And we have this again in case after case, every wiretap case, we have this problem. And the prosecutors have to have some guidance from the court what to do. And so Garcia attacked all these things and said, what's problematical, but it was a little hard to put together a standard that can be applied. And judges are now working hard to figure out, as are prosecutors, what can I ask and what can I not ask? And so the best way is to start to separate them, the testimony, which Judge Bredar did. And then the next way is to take particular questions and have, I think if there is a problem, is granting a, an objection, a standing objection, because I think in this context, it's important to hear the particular question. That's not enough, Your Honor, most respectfully. And I say this because I have some familiarity with this issue. I was one of the trial counsel. Oh, I know you do. You have a good understanding of it. Well, no, I don't. I'm saying I've been down this road because I was one of the trial counsel in Garcia. My client obtained a hung jury in the trial that Mr. Garcia was convicted in, leading to his reversal. So, been there, done that. I respectfully submit that, abstracting from Garcia, the standard must be as follows. If there's a term that requires expert interpretation for the sake of the jury, then it co-equally, to no less of a degree, requires a demonstration that there is a basis for that understanding on the part of the expert from outside of the case. Because if the understanding comes from inside of the case, it's hearsay. And the best example of that is in Garcia, the testimony by Special Agent Dayton, where 145 means 145 grams of heroin, without more. The only way she knew that is there was a seizure later in the case of how much, 145 grams of heroin. And that's not, as Judge Davis said in Garcia, that's not subject of expert testimony. That's hearsay. She's telling the jury what she knows from the investigation. And that don't fly. It's as simple as that. That's the standard. If you... Well, can't he tell the jury we seized 145 grams of heroin? That's a separate sort of testimony by the seizing agents, etc. But you cannot say, therefore, this call means that. And it doesn't matter how apparent it is on its face. And that's why Judge Davis uses that as an example in the Garcia opinion. Let me ask one question. Sure. And I know we're well over time. No, go ahead. I think this is important enough for us to... We need help, all the help we can get. But in the con, I mean, we think about experts more generally, like abstract away from these particular experts. And oftentimes those experts, they bring to the table a wealth of knowledge, right? Where in a car tire case, they know all kinds of things about rubber and the way it interacts with asphalt and all these sorts of things. And they're offered up as an expert in car tires. And they bring everything they knew before looking at the case to bear. But they don't close their eyes to the context either, right? So they don't have to do it independent of the facts of the particular case, right? So they may be experts on car tires, but they can tell that there's a long scratch down the left rear corner panel. And for whatever reason, that matters to their analysis, right? So why is it that we don't say the same thing for these experts, right? That they bring a wealth of knowledge pre-existing from the case. But when they are answering a question, they're allowed, in fact, they ought to be required to consider some context. And you don't object to some context, best I can tell, right? So the date of the call, the time of the call, the fact there's a wiretap call, or the fact maybe there's a jail call. Because that sort of impacts what getting rolled out means, right? Because rolled out, if you're on the street, is different from the jail. So we don't object to rolled out. Right. And so, yeah, no, no, I'm with you. I think you don't object to those rightfully, right? And so the question to me comes, and this is what I'm sort of struggling with, is I think you could see that some context is permissible for an agent to consider and to import the timing of call 321 to 322, right? So that's an important, that timing, in some sense, that's factual outside his expertise, right? That's information off the T3, right? But it's context and it's necessary for him to offer his expert opinion, whatever it might be. So here's what I want help understanding in your views. Once we say that and we say, yes, an expert, in this case, this expert can consider context. Tell me how to draw the line between the fact that the guy was in jail. And the fact that a dead body was found. Right, so both of those are contexts that an expert in some broad sense would consider relevant in offering an opinion, right? I mean, you know, put aside the sort of duality we're talking about with an agent. Any reasonable expert, if this was a private citizen and they came in and they said, what is the meaning of the term special light? They would, it would be malpractice for them not to consider that a dead body was found a couple of hours later. Right, any expert, you hired the expert, right? So it's not a case agent, but they can't divorce that opinion from the context of what's happening. I agree the hearsay point and Garcia's about, well, I talked to these three guys, these three guys said it, therefore, I'm going to say it. Put that aside. That isn't, that's the hearsay problem Garcia's talking about. I want to understand how are you drawing the line between some context and the context that we all would agree is relevant, but you want to exclude. I think the only way that an expert can testify about contextual information, as your honors described it, would be in the instance where there will be independent evidence of that context from another witness. What if it's his own, uh, he, he's listening to the wiretap and he knows who called. However, however, he's able to do that. Let's eliminate the hearsay problem. In other words, the context could be hearsay, which is a problem. Yes. But if the context is personal knowledge based on his own investigation, and then he gives an opinion, it gets very blurred and we should hear from him on both. And you, your argument is a little mechanical in the sense you want him to give the opinion in the abstract and then, uh, or, and then it takes the facts. I think he should be testifying as the facts first saying, as a fact witness, I can tell you, ladies and gentlemen, the jury, the following X, Y, and Z. Based upon my expertise and training. He testifies, he knows who makes the call. He gives you a context for the next day. I did this as a follow-up call and I'll tell you what it says. He puts it up on the board and has this language, the yo, yo, yo, yo, yo. Now. I don't think that yo, yo, yo could ever be translated. That's, it's just physically impossible. Unless, unless you're, unless you're between the ears of the speakers, number one, or so steeped in this case that you can only be a fact witness. I mean, some of this stuff, most respectfully, your honor. Yo, but yo, but yo, but yo, uh, I was aghast when I read that. I mean, how far that was permitted to go. There are some places where perhaps we're bumping into the line and over the line. And what is, what, what is on that particular conversation? It's a hard, hard sentence to hear, but it's helpful to the jury to know that yo serves as a pronoun or a greeting to the person and he can, and he did say that. And then the question is, well, who's it referring to? And, uh, he says, well, the telephone calls made by so-and-so and, uh, the subject of the call is somebody else. Um, the question is, I mean, we're talking ultimately, we're trying to get what happened out in the real world and the language on the street, uh, is a learned language and the people were talking in that conversation apparently understood each other. And the question is whether an officer who's been listening to it and familiar can, because it is a very contextual language. And when you conflate the interpretation in that, which is so indistinct with the tire example, where that's the kind of coded language car, you know, tires, shoes, boats, shirts. I've, I've had a client order half a shirt. I'm not sure what he was going to do with that. But so your honor and your, your honors know this better than I, where you are talking about something like this and the answer by the expert, you see it in our, uh, in our brief and it's in the JA. If he blows right by, he always uses a pronoun, he always used as an intensifier, et cetera, et cetera. He just says, it means this, that's the jury's call. He can say, I interpret it as meaning this. He didn't. Yeah. He could say, he says it means this based on my experience. Now the question is, can't you cross examine and say, okay, where's that come from? And, uh, uh, in other words, this is a very blurred area and, uh, and you're putting us in the, in the position of everybody, you know, you put the defense in the position of having a cross examine and abstract, abstract from the witness extract from the witness, perhaps an explanation and illumination of his testimony that is based upon hearsay and therefore, well, the hearsay problem, I understand, I understand the hearsay problem, but these officers are gaining a lot of this information on their own. I mean, they're listening to a lot of tapes and one tape reads on the other tape and, uh, they understand the people's voices, they come to recognize some of these people, some of them are undercover and they, anyway, you're, it's been helpful and I, uh, yes, sir. And I think we have you back, uh, for a couple of minutes on, on rebuttal. All right, Mr. Metcalf. I guess you've got it all straightened out for us. Do my best, Your Honor. Good. May it please the court. My name is David Metcalf. I'm an assistant United States attorney for the district of Maryland representing the Appalachian United States. Uh, first like to sort of frame what I think are the overarching issues in this case and set the stage, I think, analytically for how we review the type of decisions a judge like Judge Bidard made during the course of a six week racketeering trial. All sorts of issues can arise, do arise during this course of a trial. And, uh, an appellate court should defer to those type of issues. I think Judge Numeri used a really good term. It's that some of these issues are delicate exercises of discretion. You know, when a juror is exposed to information that they believe compromises their safety, how does a judge handle that? Uh, I don't, I don't really mean to cut you off and I hope I'm not short of the expert issue. We can talk about lots of other things, um, at a different point, but, but before you get to Garcia, I want to ask you the same question that I asked, uh, counsel, right? That, um, when we're talking about expert testimony, the defense concedes, and I assume you agree that some context is appropriate. Um, there probably is a limit on the amount of context. And that was Judge Niemeyer's point about, uh, Garcia where if I say three guys told me this, right? That's context that's not appropriate. Um, but help me answer the same question he did. He said context is okay if there's independent verification of that context, as I, as I understand. And he'll correct me if I misquoted that, but I wrote it down. Help me understand whether A, you agree with that or B, why you disagree with the independent part or whatever part of that you disagree with or formulate your own. Right. Your Honor, it's a difficult line to draw immediately, especially in the context of the type of content that's being interpreted. As you point out, it's not only appropriate, it's almost necessary to have some factual setting upon which to apply your expertise. And the object of this expertise in this case are Title III wiretap calls of gang communications, deliberately used to encode language. And so a, a case agent, a gang expert, whoever it is that comes in and has to come and interpret this stuff, has to listen to the communications. They have to become versed in the case itself. You cannot just in the abstract interpret this language. You're asking me at what point does an expert opinion go into a improper factual statement? I think it's when there is absolutely no sort of abstract interpretation of the semantics of a particular word, a noun or verb. I think Mr. Montemarino doesn't cavil with special light or checked in or rolled out terms of that nature. I think we all agree that's firmly within the sphere. Of expertise in this case, the factual context somewhat melds with the expertise and it's tough to draw a line. One thing I would submit to the three judge panel is all the, all the more reason that the district judge who has the best understanding of the case and the facts and the calls that are being placed to draw that line. And one point that we make in our, our brief is that sometimes, especially in the context of this case, the line between fact and expert testimony can be quite fine. And if that's the case, it's fine enough to entrust to the district court. Yes, the special agent, the person interpreting these calls must have an independent knowledge of what they mean in terms of, you can't just drop anyone into the case, Judge Richardson. I think the test should be, you can't just pick anyone from this gallery, put them in the case, and if you give them enough time to learn about it, they're able to understand what Special Agent James understood. So how about, so let me, let me sort of try to make that a little narrower, right? What if we said, you know, that context is permitted and indeed required to offer a legitimate opinion, and we said something like, you know, date, time, participants, and necessary circumstances, right? So using necessary circumstances, obviously that's its own challenge in defining what that means, but we might use, for example, the fact that Boozy was in jail, right? Because to understand the context of being ruled out and J.I. and those pieces, you've got to understand that somebody's in jail, because otherwise that, even an expert can't really give that information, because knowing they're in jail informs the fact of what those phrases mean in that particular, like, context. And so what about that formulation? I think, I think that's an appropriate one. You're, obviously I'd caution that these standards are always difficult to adhere to because it sometimes is a call-by-call basis. And even if we do establish or prescribe a standard by which, you know, certain types of factual contexts are appropriate for a gang or drug expert to explain to a jury, sometimes those contexts don't always flesh out or manifest themselves in clear ways. Mr. Monsanto picked what he believed was the most problematic quotation. And I would still submit that even indefinite pronouns in this case involved expertise. Yeah. And he, the, the, he picked the yo-yo-yo question and answer as the most problematic. Let's assume, just for the sake of argument, that we agree that that question and answer was a problem. Tell me all the reasons it's harmless. Sure, Your Honor. Because I'm sure you have plenty. There's plenty, Your Honor. Obviously we've got an entire section of our brief devoted to harmless there. And this, I think, dovetails with what Judge Niemeyer said in terms of what is the actual problem with a jury being told something is an expert opinion versus a fact opinion. If, if a... The answer I got, though, was a good one. The answer is that in that dichotomy, the prosecution can get in evidence that it otherwise could not get in. In other words, when an expert testifies in a traditional car accident or something like this, the question you ask the expert, assume that A, B, C, and D, these are facts of the case that have been laid out. Do you have an opinion as to what the cause of the accident was? And the expert said, yes. So he is now relying on facts that come to him fully as hearsay and, but have to be established independently. So the judge supervising that says, well, those facts aren't in the record yet. And so, but normally you put all the facts in the record, the skid marks, 121 feet, the direction they, all this stuff. And then he asks the expert, based on that evidence, do you have an opinion as to what the cause of the accident was? And the expert said, yes, I do. What is that opinion? Now, that's a pretty easy thing. The evidence, the hearsay that the expert's relying on, and he's entitled to rely on, is assumed and is made clear and has to be independently verified. The 145 grams that Judge Davis was talking about, if it's established in the record that there was 145 grams, then the officer can say, based on the fact that there was 145 grams established in this case, it's my opinion that call meant this, that would fit the mold. But the problem is these cases to set out the facts, you don't even know what facts are, the language, even for the people on the street is contextual. When they're using code, they're making it up as they go. And based on context, based on what they're trying to achieve, based on who they're talking to, based on what happened two minutes ago. And now, sure, we've got a special light. Everybody that's been around this stuff knows what that means. But then the next call is the direct authorization. Yes, you have the light or whatever, that type of thing. That's all seems to me legit. But the question is, how do you manage this? And one of the problems I personally had is the district judge gave a standing objection to everybody so that we don't know which particular questions were objected to, objectionable, and which weren't. And now that bogs down the trial, I suppose he's trying to streamline the trial. It's a long trial and there's a lot of evidence. But I think Judge Richardson is looking for a formulation that can be applied so that district courts and prosecutors and defense attorneys can handle this problem, recognize the real problem, because most of this evidence is probably legitimately. And I would even say a blur of opinion and fact is all right, so long as the officer has the fact. But I think the danger that was pointed out is we could be dragging in evidence that you otherwise could not get in. Well, I'll try to answer Judge Thacker's question. Yeah, stay with hers first. And your concern and also try to establish some sort of standard that would, I think, prove practical. I think first, Judge Thacker, in terms of what is the harm? I think Judge Niemeyer arrested the fact that you're free to cross-examine an expert witness about something that they truly believe is not expert testimony. The defense counsel in this case chose not to do that. And they were free to cross-examine. They decided not to. Also, Judge Bedard issued what we call cautionary instruction, whether you want to call it cautionary instruction, there was two instructions given. And expressly, the Judge Bedard stated that the jury should disregard any testimony that is not expert testimony. Judge Niemeyer, I would sort of correct one part of what you said earlier about the standing objection. Mr. Solomon was defense counsel for Mr. Bazemore and initially lodged a standing objection. He then did indeed proceed to lodge numerous objections throughout the court, throughout the case of Special Agent James' testimony. And I think one thing that's important for the panel to recognize is that Judge Bedard sustained some of these objections. Jay, 978. No, I saw that. Yeah. Yeah. So we're not, I don't think we're in a situation where Judge Bedard sort of pushed the ship out to the sea and then, you know, everything came in and there was no sort of policing. What was the ground, typically, for sustaining? The ground of this appeal, Your Honor. And they, for example, there was one quote that said, don't worry about it. Special Agent James was asked to clarify the meaning of that term. Mr. Solomon objected. Judge Bedard sustained that objection. They said that's it. Well, that's just not subject to expert opinion. Exactly. And that's why the objection is sustained. That doesn't hurt anything. Exactly. And that's, Judge Thacker, to your point, it doesn't hurt anything. If someone's interpreting quotidian language that's obvious, the jury can roll their eyes and just say, look, we know what this means. And it is harmless. And Judge Niemeyer, so I think the fact that there were sustained objections, I think, shows that the line was policed by Judge Bedard. And Judge Bedard, you sort of identified what I think is the most problematic aspect of Garcia, which is the importation of not, of testimonial hearsay. Didn't Judge Bedard also, at times of his own accord, interject and redirect or try to redirect the government? Absolutely, Judge Thacker, he did. And one thing, finishing the thought about the importation of hearsay, we all agree that that was the salient problem of Garcia. It's not present in this case. Special Agent James and the AUSA below made it clear that he is not testifying based on his conversations with, for example, co-defendants or co-conspirators. He's basing this on previous gang investigations. That's JA-971 and JA-981. So that's not present here. And I think one thing that's important is that the conclusion of the special agent's testimony, Judge Bedard took a very careful opportunity to make sure that he clarified in the record that the government had laid the factual foundation, the factual context for which the agent was applying his expertise. And that, I think, obviates or precludes any notion that any hearsay was imported. So I think that's the issue, Judge Niemeyer, that you point out that would be problematic. And it's absent from this case. It's one of many reasons why it's the case. Let me ask you just a straight factual question, which may come to Judge Thacker's question at some point. You provided us in the Supplemental Joint Appendix the transcript of 321, which is very helpful. And I appreciate that. That was the special light call. And you had your agent, I say you, I don't know whether it was actually you, but you get the credit and or the blame. And so you had your agent testify about what that meant. And then immediately thereafter, you identified that 322 is the next call. And you play it without interpretation because apparently you believe it didn't require interpretation. So there's no interpretation. Then you go to your detective who finds the body, right? But you don't include for us, which is fine. I'm just want to make sure I understand it. The text of the call 322, which is the one where Basemore actually authorizes the hit. You summarize it in your closing. That's the only place, right? That's literally what I'm getting to. So page 1081, it's a longer build up. I should have just asked it like the same way I did. So on page 1081, you say, quote, and you quote what I believe to be section 322. Is that an accurate reflection of what 322 actually says? I believe so, your honor. And no, I wasn't the AUSA, but I know the panel, I'm all you got. So I'll try to explain it as best I can. Will you do this for me? If that is not a correct quote, will you provide a letter to the court just confirming that for us? I want to know whether I can rely on this in looking at the harmlessness question. I'm going to assume I can, unless I hear otherwise. And just to make sure I'm clear on this, you're talking about the quotation in closing argument that summarizes the call 322, session 322. Page 1081 of the joint appendix, lines 15 and 16. 322 is in the record, right? 321 is in the record.  Yes, it's in the record. Yeah, all the, all of it. But there's no transcription of 322 in the record, right? I believe there is a transcription of 322 in the record. Not in our record. Why wasn't it put in this joint appendix then? I don't, I don't know, your honor. If it's in the record, why don't you, unless counsel has an objection, why don't you just send us a copy? We can, we can supplement it if the court requests. I think we were trying to. But there would be no objection from any counsel, any special visitors, any counselor who was sentenced on a date. The defense would not object to anything that's in the record. Yeah, yeah. Well, I know, and this is, the joint appendix is already grown, but it seemed to be a call. I had the same question. It seemed to be a call that's fairly critical because it was, it's the actual violation. Sure. And so maybe just provide us that so we can, if we refer to it, we can quote the actual document instead of the closing argument. Sure. And what we try to do with the supplementary joint appendix is just give the court a flavor of how inscrutable some of these calls were without a drug ring expert to aid the jury. I mean, obviously, Judge Niemeyer, if you're, if you're having trouble deciphering what yo or he, or any of these words mean, I mean, imagine how a jury feels. And the test is. Well, the one question he asked is a model. I mean, that's a law school question. The yo, yo, yo, yo. I mean, the parts of the sentences. And we, in our brief, we tried to explain why that even indefinite pronouns that are seemingly simple and sort of defy expert, you know, interpretation still nonetheless can be interpreted. I mean, this is a very contextual and nuanced type of call that's being interpreted. You have to know that only certain people are allowed to give oaths within a certain gang hierarchy. And that sort of informs the expert's interpretation of that particular call. And I would say that that theme permeates many of the calls in which an appellant sort of takes issue with what he believes are either something that's straightforward or commonsensical or something that's so far beyond the pale of expertise that only, quote, a mind reader could interpret. We submit that in this case, you have to become quite conversant in not only the facts of the case, but also bring to bear this background expertise about the gang hierarchy and also the terminology that is used. Did you know that yo is an indefinite pronoun, that it's used in this context to refer to? Well, I never heard it as an indefinite pronoun until this case. I've always just heard it as yo. It's sort of a greeting to you. And yo is, but to refer to some third person as yo. Sitting in Baltimore, I'm surprised to hear that. Oh, I know, I'm surprised at myself. He's in slightly different places than. I'm just improving my vocabulary. And I think it is somewhat comical, but I think it elucidates, I think, the propriety of the expert testimony in this case. And it's difficult. And I think Judge Richardson, I think the point we should all come back to is this is an opportunity to clarify Garcia and its contours and to try to establish a workable framework for someone like Special Agent James to go through. And I do want to sort of caution the court that it is, I believe, forensically impractical to require two witnesses or two different opinions to decipher individual words within a sentence. I don't think Rule 702 or the principles of Garcia really require that. What's your idea about the bifurcating the witness? In other words, I know Garcia sort of suggests something like this, and I'm wondering, is that necessary under your theory of this, of principles that should be applied? In other words, why couldn't an expert be on the stand once and say all is facts about the investigation? And then you say, all right, I'm going to ask you some opinions based on your investigation now, and what you're now going to give me is your opinion, testimony, and you qualify. Can that be done in the same sitting on the, I know here they bifurcated. Well, I think that they bifurcated Special Agent James's role as case agent in terms of executing search warrants and just the actual authenticity of the calls. I think your question pertains to, can you actually bifurcate the interpretation itself between lay opinion and expert opinion? I would submit that's very difficult to do. And for the following reasons, I mean, this court has already suggested in U.S. v. Johnson, the 2010 decision, that some of what we might think is lay opinion might well be expert opinion. And I think, Judge Niemeyer, you pointed out earlier that the content of these calls are somewhat, the expertise and the factual context are somewhat interdependent. And I think that's what I would submit here. So I'm not sure it is possible to sit Special Agent James down for 30 minutes and say, what is your lay opinion as to these words? What is your expert opinion as to these words? Parsing it out at the individual sentence level, to use the words in our brief, the atomic level of words, I think that's difficult. I think the more, I think, pragmatic and appropriate approach is just for this panel to recognize that for Title III wiretaps involving a gang hierarchy and very sophisticated communications, that there's going to be circumstances in which expertise is going to meld with the factual context in a way that isn't that problematic and, in fact, endemic to these type of communications. That's what I would submit, Judge Richardson. But you do agree, I presume, that regardless of those two ideas, that if he's testifying as an expert, it must, at its core, it may take into account factual circumstances, but it must, at its core, be based on his training and experience, not just the context of the case. That's absolutely correct. 702 business. Yeah. Judge Richardson, that's absolutely correct. I think the standard I tried to proffer earlier was you cannot just pick someone from the street, set them into the context of the investigation, explain the investigation to them, and then play them these calls, and they be able to understand it the way Special Agent James did. That, I think, is the best that can come to a test, is the person has to not only learn the case, but also have, in combination with that, this underlying expertise of the terminology of the words and the understanding of the gang hierarchy. And you could, if I can just add to that, but you could do it differently, right? You could do the tire example that I gave earlier. You could give a true expert, maybe an agent from another case, you could give him the entire case file and have him read the case file, review all those wiretap calls, and offer an expert opinion, just like the tire expert does after he reviews all of the evidence of the car rack. But there's no problem with doing it with the case agent, is what you're saying. Absolutely. And as we point out, Rule 703 says that experts oftentimes will base their opinion on stuff they observed firsthand, and this court sanctioned that in U.S. v. Perkins. It happens. It's not uncommon for the case agent to also be the expert witness in this case. It depends on the case. Sometimes they do bring in sort of someone from the outside to come in. I would submit, even if you did that in this case, Your Honor, it's tough, again, to so segregate the expertise and the fact opinion. There's going to be necessarily some factual context inputted to the expertise that isn't problematic, that is not harmless, even if it is sort of crosses the line. And the last thing I'll point out in terms of, I know I'm out of time, is that any error would be harmless for the reasons we described. Mr. Bazemore and the rest of his appellants were found liable for multiple acts of murder and other crimes that escalated their guidelines range. And for all those reasons, we encourage the panel to affirm. Thank you, Mr. Metcalf. Why don't we, Mr. Burnham, do we stay in the same order or do you guys want to split? Your Honor, I'm happy to yield my time in fact to Mr. Mazamorada since most of the government's argument has to do with this issue. Fair enough. Thank you. Once more into the breach. Well, I hate to look a gift horse in the mouth, I have to take issue with your 145 hypothetical that you posed about halfway through, Mr. Metcalf's argument. That's not something which would be susceptible to expert testimony. The fact is the 145 is seized in the case in Garcia. That's hearsay. That can come in through the seizing agent. But there is no way, absent the knowledge of the 145 seizure, that any case agent could tell you that 145, untethered to any other information, which is what it was in that call in Garcia, has meaning relative to drugs or drug amount. And that's where the line is drawn. Let's go to the stuff that Judge Richardson was asking about. You get timing, when it's seized, when after, you get prior discussions, after discussions, confirmations. In the typical civil lawsuit, the expert reads the depositions. He reads the interrogatory answers. He looks at these documents. He reads these reports. And one of the preliminary questions every lawyer asks, all right, what did you review before coming to court? And on which you based your opinion? And he says, I read this deposition, this deposition, I read these things, and so forth. And then you ask him, do you have an opinion based on that? And he says, yes. And then you say, on what do you base your opinion? Then he goes and lays it out. But my point in all of that was, that is not a cover for that hearsay to come in, because it's already in. It's already been established. And the expert didn't learn it. He took the context in the case. If there's no reason, though, that he personally couldn't have said, well, I measured the skid marks. I saw the bark on the tree. I photographed it. I diagrammed the location, and so forth. That's all personal information. And he can base his opinion on that, too. So if you make those analogies, the 145 could be hearsay if it just comes in. He says, I rely on the fact that they seized 145 and required that to come in independently. But I know this was referring to that 145 because, and then he goes A, B, C, D. And lays out the sequencing, the context, the timing. The persons involved? Perhaps that could. I'm hesitant to agree, because I'd be taking issue with Judge Davis's opinion, which specifically uses that as an example of what went wrong. Well, I'm not trying to undermine Judge Davis's opinion. Not at all. I'm trying to get some standards for. Absolutely. And I think the standards relate to the way the government chooses to abuse the evidence, and what the court permits them to do. Quite honestly, if you give them that much rope, they will certainly run with it. I've elaborated on that. Let me ask this question, which I think is the same. So instead of 145, let's just hypothetically use the word special light. And so the government asked the question, what does that mean? It means this. And then they stop. They take him off the stand. And as you indicate, they provide independent verification. They put Bominca, or however I say his name, the guy who found the body. So they put him up, and he says, yeah, I found the body. And so they independently sort of verify that fact. Or do it in advance. Or do it in advance. But in this case, they independently verified it in the middle of Special Agent James' testimony. But imagine the slightly different. I just want to wonder whether this independent verification matters. Imagine the hypothetical where, in this case, he says the same thing about special light. But instead of Bominca being the first guy on the scene to find Hall's body. Is it Hall's body? Whoever's body it was, regardless. To find the body. Imagine Special Agent James happened to be the first guy on the scene. And so he's the one that found the body. And so it's not hearsay, right? Like, he found the body. So it's not independent of Special Agent James. But it's verified by otherwise, using Judge Niemeyer's otherwise admissible evidence. So he testifies special light means this. Here's why I believe it. What happened next? I went to the house. I found the body. And I've encountered special light previously in my knowledge training experience. But part of his conclusion, that's right, absolutely. Because as I mentioned earlier. In an MS case, it'd be green light. It has to be, it has to have some basis in his training and expertise. Certainly. But it also can include, and this is the point I'm trying to make, is it also can include context as a partial basis for that decision. And a properly posed line of inquiry would probably make that admissible. We don't have that. If you look at pages 41 and 42 of our brief, at the bottom of 41, can you tell the ladies, and this is a government question posed by Mr. Walner, can you tell the ladies and gentlemen of the jury, the purpose of this individual wanting to holler at Mr. Bazemore? Are you kidding me? Is he a mind reader? Because that's the only way to answer that question. You cannot begin to abstract the purpose of a call. Except the most obvious thing, pick me up a six pack of beer. Well, okay, the purpose is to pick me up a six pack of beer. And if he uses coded language for a six pack of beer. Yeah, but what if he changed the question and said, does the call manifest the purpose? That's really what the question means. It may have been an artful, but he's trying to get at, does the call manifest its purpose? And he has to then interpret the language. That would be something which a proper foundation necessarily must be laid under Garcia to establish that there's a basis for this in expertise and not just in hearsay. Well, that gets to the language. I mean, that's a special light. We sort of agreed that it needs interpretation. All right. And then, on middle of page 42, and do you have an opinion as to why Mr. Harrington is asking who made the call? We've heard a double hearsay. That's sort of double Garcia. An opinion as to why, how can that be countenanced? Then it's basically, I think he's a bad dude, so he must be talking about bad stuff, and I can tell you that because I'm an expert. Because that's what it reduces to. I think that- Yeah, but see, that's not one of the problems of 702. That's a problem of phrasing. I mean, basically, if we ask why, you have to lay a foundation to ask that type of question in any circumstance. And it may be critical of the questioner's formulation, but I'm not sure it presents the real problem that you're raising on appeal, does it? Oh, I think it does when that sort of thing infects virtually the entirety of the expert's testimony. I mean, there's no question this is a crucial witness. The government would not be putting them on otherwise. And I think the language of Judge Davis- I don't think you should always make that assumption. Well, that may be true, Your Honor. I'm always going to give the benefit of the doubt, frankly, to Jim Walder, who's a very, very good attorney. And I don't think he was trying to pull anything. I think he was basing it upon his understanding. And it was an understanding which, I'm going to use this phrase, it may not be felicitous, the judge, in essence, aided and abetted. He did not retrench upon the government's expansive view of what Garcia permitted them. Again, my view is different and I'm not going to suggest otherwise. I stand here as an advocate and I'd be lying to suggest that there's anything else to why I'm here. But when we permit something as broad as this, and we permit it then to be used everywhere. I mean, I have a toolbox at home and I have different size tools for the same tool, but in different sizes for different purposes. You cannot put a one size fits all. That's the reason Garcia is telling us that you must have an explanation for each and every conclusion expertise in the expertise that you have gained before this case, which goes back to my theory. And that is, you have to be able to show that the agent had an understanding of the meaning of the term absent the knowledge he gained from the investigation. And the best way to be sure about that is for him to show, I know about this because I encountered it in three or four investigations, special light, long before we ever went up on the wiretap for Bazemore and his crew. Well, then there's a basis, but saying it, when you, it becomes a circular form of logic when we take it from the interior of the case and roll it back into the expert witness testimony. All right. I think we recognize some of the problem. I think you do. Thank you for your time. We'll come down and Greek council, proceed on to the last case.
judges: Paul V. Niemeyer, Stephanie D. Thacker, Julius N. Richardson